Good morning, and welcome to Oral Arguments in the Eleventh Circuit today. Just a couple of things before we begin. We are familiar with your cases. We've read your briefs and relevant parts of the record, so feel free to jump right into the heart of your argument. Secondly, don't forget about our traffic light timing system. When the light turns yellow, you have two minutes remaining in your allotted time, and when the light turns red, please do quickly conclude if you're the appellant, otherwise you'll be eating into your rebuttal time. The exception is, if you're answering a question from the court, then you may complete your answer. We'll get started with our first case, number 23-13966, Managed Care Advisory Group, LLC v. Cigna Healthcare, Inc. Good morning, Your Honors. May it please the Court, Jeffrey Gutchis for the Managed Care Advisory Group. I'll probably refer to them as MCAG. In the Garvey Major League Baseball case from some 25 years ago, the United States Supreme Court commented that the Ninth Circuit had recited correctly the bedrock principles of arbitration awards being almost impossible to vacate, but its application of those principles was nothing short of baffling. Here, the District Court did not even bother to cite controlling Supreme Court precedent. It did not even bother to cite controlling Eleventh Circuit precedent, many of which were written by members of this panel. Let me just quickly refer to Girardi v. Citibank, where the Court said, vacature is very unusual. It's one of the narrowest known to law. Even serious error is not grounds for vacature. The Court need not even review the reasoning of the arbitrator. All the Court needs to do is see that the arbitrator arguably construed the contract. The District Court here did not cite that case and did not apply any of those standards. If you look at the District Court's order, it is remarkable in that it just dove right into the contract and repeatedly made contract construction rulings. The Court must give all the provisions of the settlement meeting, it writes. It cannot give certain provisions of the settlement more meaning than others. Can I ask you a question about the record? Had all of the Category 2 claims at issue in this appeal reached final approval or denial when the arbitration agreement was reached? What was the status of the outstanding claims? Your Honor, none of the Category 2 claims had even been processed. What's remarkable is that Cigna entered into this agreement with this complex claims processing system, and then they never processed a single claim because it was so difficult to assemble the documentation to submit a claim that they didn't think there were going to be many claims. So what happened is when they were submitted by physicians or hospitals, Cigna just paid them. It didn't process them. It didn't assemble review files, it just paid them. And there were so few claims submitted that that was better than processing the claims. And what happened is the American Medical Association and state medical societies went out and got MCAG to assemble, went out to like Duke University, Texas Children's Hospital, and they assembled the claims and they submitted them, and all of a sudden Cigna was faced with this overwhelming number of claims that was going to blow up the economics of the settlement, so Cigna just refused to process the claims. And there were a little spreadsheet, 35 ways to know that we'd call it, and they refused to process them and they just denied them. And that's when MCAG filed the motion to enforce with the District Court, which then went to arbitration before the Honorable Edward Davis, and it was two years before Judge Davis realized that Cigna had not even processed the claims and ordered them to process the claims. So no, I mean, and that's one of the remarkable things about this 20-year arbitration. But getting back to the contract interpretation, you know, Judge, the District Court, in my opinion, obviously erred and went against the contract. If you look at the contract, you know, if the claimants assembled the documentation, Cigna had an obligation to assemble a review file. And just to rebut the claim, right, and if Cigna could not do that, the settlement agreement said, and it was heavily bargained for, it said if Cigna cannot assemble a review file, the claims have to be paid. And what happened is. Is that why Cigna, when the number of claims was lower, had just paid them? Yes, they just paid them. And so what happened was Cigna, you know, it was a big effort to assemble a review file for 100,000 claims, right? So Cigna tried to do it through its computer system, and it was unable to do so. Sorry, Cigna tried to do it through its computer system and was unable to do so, and a big reason why is Cigna had been assembled in the 90s from different companies, and so they all had different computer systems, and so Cigna just did not have the data available to rebut the claims. So that's why when we get to the arbitration, we have all of these, in the spreadsheet you have all these records found, category no. So Cigna just could not find the records to present a review file. So for us, it was obvious. We just cited the clause in the settlement agreement that said Cigna had to present a review file, and if it couldn't, it should be paid. And that's what the arbitrator ruled as well. So, you know, case closed. It's open and shut. It's simple. If you go, if you look at Cigna's other arguments that somehow the arbitrator was prohibited from ruling, just look at the arbitration agreement that the purpose is final resolution of all category two claims payable pursuant to the settlement agreement. That's the main arbitration agreement, but the supplemental arbitration agreement, paragraph three specifies, and I quote, the parties agree that the purpose of the arbitration is for the arbitrator to conduct a de novo review of the compensability of MK's claims under the settlement agreement among Cigna Healthcare and Physicians. But it goes further than that. If you read into the middle of the paragraph, it talks about this supposed finality of the settlement administrator, and it actually says the parties agree that they will not mention before the arbitrator. Mr. Glucha, to what extent did the doctors or suppliers or providers release Cigna with respect to the category two claim? So, obviously. Which had already been submitted at an earlier time. Yes, so as of the date of the settlement agreement. Resubmission of claims. Right. So, as of the date of the settlement agreement, right, none of those had been released. The settlement agreement was entered into and it defined a category two claim, and so anything that's a category two claim was submitted after the settlement agreement. I understand that. Right. For an independent assessment. Yes. And what does the settlement agreement say about those? It says that they have to be processed in a certain way, and Cigna has to assemble a review file. So, that's exactly what happened here. And when it goes to the determination of the settlement administrator, it says the arbitration agreement says that the parties are not even to mention that the settlement administrator reached any substantive determinations as to the validity of any claim. And no argument shall be made that reasonably requires a party to rely on the settlement administrator's determinations in response to such a claim. So, here you have the arbitration agreement saying the arbitrator shall make a de novo review of all claims two and not even consider what the settlement administrator did. So, how can the district court then say, well, the settlement administrator's decisions are final and cannot be contested in a 20-year arbitration that the district court itself agreed to in 2005 and again in 2020? I have nothing further.  Good morning. May it please the court, Alvin Lindsey with Marty Steinberg on brief on behalf of the appellee, Cigna Healthcare. When the special master reversed over 81,000 final determinations that had previously been made by the contractually agreed upon reviewers and found liability against Cigna for a supposed procedural mistake by the settlement administrator, he far exceeded the authority granted to him by the parties and by the district court. And given that Judge Moreno retained jurisdiction to determine issues related to the, quote, administration and implementation of this court-approved settlement agreement as well as to rule in the first place on the undecided release issue, the judge was entitled to review the special master's decision pursuant to Rule 53 and his decision vacating the final award should be upheld on an abuse of discretion standard. Today, I'd like to briefly discuss three points. First, this is not an appeal from a vacator of an arbitral decision under the Federal Arbitration Act or the FAA, but it's an appeal from the vacator of a special master's decision under Rule 53. Second, the settlement agreement that bound the special master did not permit him or any court or tribunal to overturn the decisions of the reviewers or find liability against Cigna for the administration of that agreement. And finally, the law on exceeding one's power and authority is clear. One cannot simply ignore the provisions of the contract and implement one's own brand of justice as was done by the special master. First, and again, hearing all this about arbitration, arbitration, arbitration, it cannot be emphasized enough. This is not an appeal from an arbitral decision under the FAA. The June 20, 2020 stipulated order appointing the special master, and that's at docket entry 6677, is clear that all litigation is being, quote, transferred to the federal court, including what was the then current arbitration. The stipulated order appoints the special master, quote, in lieu of the arbitrator. The stipulated order then cites myriad case law holding that on agreement, parties are permitted to revoke an arbitration and move the proceedings to federal court. If there's any doubt, Magistrate Judge Goodman confirmed that this matter was no longer in the arbitration in his 2021 R&R, which can be found at docket entry 6748, holding that, quote, the separate private arbitration previously labeled as an arbitration and provided over by an arbitrator no longer exists. The entire arbitral proceeding has been transferred to federal court and the parties have brought the matter back to federal court. Thus, cases holding that a review of arbitration decisions is narrow, expedited, or presumed correct, those cases simply do not apply. This is not an appeal arising out of the FAA. Now, to be sure, the parties did limit the issues that could be appealed to those that are the same as found in the FAA, including that the special master exceeded his power or authority. But nowhere in the stipulated order did the parties or court mention or in any way agree that the FAA controls. It does not. Yes, Judge? It's been a while since I read your brief, so this may be my forgetfulness, but can you tell me where in your brief you made this argument that the FAA is irrelevant? Your Honor, it really, you know, and I'm going to concede, all parties in the court, the only thing, the only exception I have with the court's order below is that he called it an arbitrator, and it's not. And. Did you tell us that in your brief here? Your Honor, I don't think so, but it, you know, calling the sun blue and the sky yellow doesn't change the fact that under the order appointing the special master, this is in federal court. It's not an arbitration, and nobody agreed that it was going to be any longer an arbitration. There was an arbitration for 10 years under retired Judge Davis and Mr. Schultz, and they guided the process of reviewing all these claims. And to answer an earlier question, every one of these decisions that the special master, quote, in his words at page 63 of his decision, reversed, those had already been decided by the reviewers, and under section 8.3C2, those decisions by the reviewers could not be appealed or reviewed by this capital C court, or quote, any tribunal or court. They were final. That was what the parties agreed upon. And, Your Honor, I do concede that everybody was guilty of calling this an arbitration, but it was not. It was, and maybe that was just, you know, a continuation of what was an arbitration. You can understand why I might think that this is a late-breaking argument on the day of appeal, right, the day of oral argument for the appeal from a case that started in 1999. Well, what was briefed is, certainly still applies, and under any standard of review, although remember, it's a special master. Rule 53 allows the trial judge to review findings of fact and conclusions of law de novo. And that's the standard . . . And that may be, this whole case was briefed to us as an arbitration case. Counsel, if this were an arbitration . . . Yes, Your Honor. . . . . . . there would be a motion to vacate under 10, section 10. Yes, Your Honor. 1, 10.1, 10.8, 1, 2, 3, 4. Yep. Okay. I find nothing in the record. And so, we would review the judge's order setting aside the so-called arbitration under suitor. You're familiar with suitor in that line of cases? Your Honor, I'm sorry, I'm familiar with all the . . . It says, it narrows the scope of review of a section 10A arbitration very narrowly. You follow me?  All that we do is look to see whether or not the arbitrator, as it were, properly interpreted the contract, the parties, the settlement agreement. Yes, Your Honor. Yeah. So, what I can say . . .  And applied the settlement agreement. Right. Well, even . . . I'm just speaking for myself. That is what happens when you move to vacate an arbitration award under the FAA. Under the FAA. Yes, Your Honor. There's myriad cases out there finding that congressional intent with the FAA was that review would be . . . I find nothing in the record at all to the briefs indicating this is a FAA vacater. And it's not. You're right. And again, Docket Entry 6677, this is not an arbitration. The language that the parties agreed to in that document, in the stipulated order, tracked the grounds that could be made for appeal. And those tracked FAA Section 10A 1 through 4. They tracked it. But nowhere did the parties agree that the FAA controls. It does not. Pure and simple. This is a special master. Now, everybody . . . That was the language. Did the arbitrator exceed the power or authority? And even under . . . Obviously, all the cases that didn't analyze that are arbitration cases. And those cases, and I'm thinking of the Improza v. Del Monte GMBH case, which said the question is whether the arbitrator had the power to make these decisions, not whether he got them right or wrong. Now . . . You're talking about the special master. I'm sorry. I'm talking about . . . In this case, it applies to the special master. But in the Improza v. Del Monte case, there was an arbitrator. And it was being analyzed under Section 10 of the FAA. And I'm just saying, even under that section, clearly, the arbitrator, the special master violated, exceeded his powers under the two sections that are critical. Section 8.3c.2 says, first of all, if Cigna denied a Category 2 claim, that claim EPIC, the claim administrator, was to automatically send the claims to the reviewers. And as Judge Davis held in his very important 2008 order, that for all claims denied by Cigna, the claims should be forwarded for external review. And Cigna shall compile and forward any review file defined as existing and reasonably accessible documents to a company that denied the claim. But it was for the reviewers to decide those claims. And the settlement . . . At what point in the proceedings did you first raise your argument that the settlement agreement barred claims? Well, I believe we've made this argument throughout, Your Honor.  Starting when? Starting before . . . starting immediately when we found out, when we figured out that they were trying to resurrect this so-called review file no claim. We filed, I believe, a motion to enforce . . . At what point in the proceedings was that? Was it before the arbitration started? Yes. It was before the year 2000 submission to the special master, right around that time when it first became clear. And we defended on that ground, too, in our answer to affirmative defenses that the reviewers had already made these decisions and they could not be undone. And the arbitration agreement is clear that once the reviewers make those decisions, no court or tribunal could overturn them. And it was also clear that Section 9.6, which, by the way, the special master did not review or interpret or discuss in any way, but 9.6, and it bound him, because remember, in the order appointing him, it said he is bound by the settlement agreement. It says no person shall have any cause of action against Cigna based on the administration or implementation of the settlement agreement. In other words, Cigna could not be sued, as it was here, for any claim based on the process of how the agreement was administered. Section 9.6 continued that the sole remedy for a claim based on the administration and implementation of the agreement is application to the district court for enforcement of the settlement agreement. And we've made those applications. Again, the court retained jurisdiction as to all matters going back to the 2005 settlement agreement that the court approved, and it became part of his final order, the court Finally, and again, binding on the special master, but not discussed or addressed or considered by him, is the article, and the release is found at 1.108 of the settlement agreement, Section 1.108. And it provides that all claims that could have been asserted were released, all claims, all of these Category 2 claims were released from any further determinations in the court system or arbitration or anywhere else. That the only way, and far from being a generic release, it was plainly bespoke, part of 164 page settlement agreement, and the only, the reason of the release was that no remaining claim could be litigated. Those claims could only be resolved by the reviewers under the process set forth in Section 8.3. Then what was left to arbitrate? Well, that's a good question. Basically, once a reviewer decided something, that could not be arbitrated. But for example, when, at the time of going to the special master, there was a claim by MCAG that the settlement administrator, Epic, had not processed a few, a number, not a large amount, I don't believe, of claims, and that was against Epic, and that was one of the issues outstanding, and if there were any outstanding claims that had not been resolved, the arbitrator could address those. But what the arbitrator or special master or court could not do is reverse the decisions of the reviewers. That was beyond his authority, and he violated that restriction by, in his words, quote, reversing, reversing, and that's at page 61 of his, 63, excuse me, of his final award, the decisions of the reviewers. He reversed over 81,000. With regard to those, not one of those decisions did he say was decided wrongly or was in any way improper on the merits. He just en masse decided 81,000 claims that the reviewers had already been decided and that were final. That under any, even under the FAA, that was improper. That exceeded his power and authority. And this was all discussed, again, I would commend the court to the court's . . .  Yes, Your Honor. If you want to talk about the FAA and exceeding the power, then you have to take the position that Cigna treated this arbitration as a classical arbitration, do you understand me? Yes, I understand what you're saying, Your Honor. And if they did, if that is the case, and there was an award, then when Cigna says we moved to vacate, then they moved to vacate under Section 10, Section 910, Section 10 of 9. I'll put it that way. At any rate, and now the review is controlled by the Supreme Court's decision in Souter. Respectfully, Your Honor. And a couple of our decisions which track Souter, do you understand? I understand. And all we ask is whether or not the arbitrator applied the party's agreement, interpreted it. And if he did, that's the end of the inquiry, because if he made a mistake, it doesn't matter under those cases. Do you understand what I'm saying? Your Honor, the 11th, I do. I'm going back to the misuse of the word arbitrator. All I can say . . . This is a motion to vacate the special master's report, as it were, or deny it, whatever. But Judge Dura, in his order, never once mentions the FAA in Section 10. He applies the standards of FAA Section 10, because that language was agreed upon by the parties. Well, he's using some words, words out of Section 10. Do you understand me? Yeah, they're the same words. There are words in Section 10 which talk about exceeding power. And they're the same words? Those are . . . but that's a term of art. Do you understand what I'm saying? I understand what you're saying. You can use the same words in reviewing a special master's report, but you're not doing it under the FAA. Do you follow me? I do. You're not? No. You see, because when the matter got transferred back to federal court, the baggage . . . The first . . . . . . back to the FAA did not . . . The first strange thing about this case to begin with is why in the world a district judge is appointing an arbitrator to arbitrate a dispute under an arbitration clause? Do you follow me? That never happens. Usually, these cases are arbitrated under the AAA rules. Are you familiar with those? Very familiar. I'm a panel member. So they're arbitrated under the rules and the AAA appoints an arbitrator. Do you follow me? This was an ad hoc . . . That's the classic arbitration thing. When this was an arbitration, it was ad hoc. It was not . . . But it was an arbitration. That is so. But it got out of arbitration. And the AAA rules still don't apply. And it got out of arbitration. It went back to the federal court. Same language. So it's not an FAA problem. Correct. All right. Exactly right, Your Honor. I see my time is up. I thank you. We respectfully request the court uphold Judge Moreno's order vacating the special master. Thank you. Judge Davis, the first arbitrator, noted in one of his orders that Cigna's arguments were often on a different plane. And the court has just seen that here today. If the court looks at the motion to vacate that Cigna filed, it has big heading standards for vacating an arbitration award. And the first line is, the Federal Arbitration Act sets out the standards under which a party may seek an order vacating a final arbitration award, C9 U.S.C. Section 10A, and it goes on. So Cigna moved to vacate this as an arbitration award. There's nothing in the briefs that discusses the Supreme Court's decisions and ours that govern the review of the motion to vacate an arbitration award. Do you agree with that? Our briefs. I couldn't find a word. In either side. Our briefs heavily discussed the Supreme Court case. The first thing you do, you decide under what section of 10 is the motion made. Yes. And what section of 10 is it made? Section 10.4, Your Honor. 10.4, all right.  Under what provision of 10.4? That the arbitrator... There are four sections. Yes. And the fourth section is that the arbitrator exceeded his authority. So that... And both sides argued that. If this was a classic arbitration governed by the FAA, it was a section... I'm giving you a softball. Yes, it was. Because you didn't make... You didn't argue... You don't... Do you know about Souter? Yes. You do. But Judge... Do you know about all of the cases we have written about Souter? Yes. I've read them last night and this morning. That's why I mentioned the Girardi case, which I thought was most on point. But Judge... Then what's the standard to review? For a contract interpretation case is... No, no. We're not reviewing a contract interpretation to determine whether it's right or wrong under the FAA. Right. It's only if the arbitrator ignored...  The question is whether the arbitrator even looked at the contract. Yes, exactly. All right. And then what's the standard? If the arbitrator just disregarded the contract...  ...and did his own rough justice. Oh. If the... What is the standard of reviewing under Section 10? Well, your standard is de novo. You'd make the same rule that Judge Moreno made. No, he doesn't cite any of it. I know... Judge Moreno is reviewing this as if it is not a FAA arbitration. Do you follow me? No, Judge Moreno calls it... I'm talking about what he did. ...a motion to vacate an arbitration. And he says he's vacating an arbitration award. And he applies the same standard. Let me jump briefly to another issue that I feel an urgent need to clarify. And that is Cigna's alleged release argument. The first time it appeared was in January 2017 in their affirmative defenses. And let me read you what it says. And this is record citation DE6937-6. And it says, MCAG's claims are barred by the doctrine of release. And that qualifies it. To the extent that MCAG is seeking to recover payments for claims Cigna already has paid, right, either through the original settlement agreement process or through any of the reprocessings that have occurred during the arbitration. Any such claimants have released Cigna from any further liability on such claims. And that's because during the arbitration, Judge Davis ordered the settlement administrator to process the claims, and they ended up paying $14 million in claims. And so Cigna's release argument up through the arbitration to the end of the arbitration was that any claims that Cigna had already paid were released, which we agree with. Right? If Cigna paid the claim, they're released. Cigna never made this argument that anything was released and couldn't be brought until this appeal, which obviously is way too late and is way too late. Would you agree that the district court reserved jurisdiction to enforce the settlement agreement, which included, of course, interpreting its terms? Originally, I did. Absolutely. Reserved jurisdiction to do that? Yes. So there was nothing that the so-called arbitrator could do that would usurp the district court's power of interpreting the settlement agreement. Or I'll put it another way. Whatever he did would be subject to the district court's power to interpret the settlement agreement. Once the parties agreed to arbitrate. You agree with that? I do not. Once the parties agreed to arbitrate, the arbitrator had the sole power to interpret. That's all right. Your argument is that in effect, when it went into arbitration, the district court lacked power to interpret and enforce the agreement. Absolutely. That was turned over to arbitration. Absolutely. All right. Thank you, Your Honor. I just want to make sure I'm understanding. I've got Cigna's motion to vacate, and under the heading Standards for Vacating an Arbitration Award, it says the Federal Arbitration Act sets out the standards under which a party may seek in order of vacating a final arbitration award, C9USD Section 10A. Is that your understanding that that was the basis of that motion at the time?  Yes. Thank you. Thank you, Counsel. Here we go.